J-S71022-17

2018 PA Super 48

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| RUSTY LEE BRENSINGER | : | |
| Appellant | : | No. 212 EDA 2017 |

Appeal from the PCRA Order December 23, 2016
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s):  CP-39-CR-0003251-1997

BEFORE:   PANELLA, J., STABILE, J., and PLATT[*], J.

DISSENTING OPINION BY PANELLA, J.          **FILED MARCH 05, 2018**

I agree with my esteemed colleagues in the Majority that controlling case law currently mandates the application of the public record presumption in cases where a PCRA petitioner is represented by counsel. However, the presumption's days appear to be numbered. As the Majority observes, the Supreme Court of Pennsylvania provided an exception to the presumption for *pro se* petitioners in ***Commonwealth v. Burton***, 158 A.3d 618 (Pa. 2017). But there is a subtext that underlies both the majority opinion in ***Burton*** and the dissent.

The majority opinion in ***Burton*** narrowly defined the issue before it as whether it should apply the presumption to incarcerated *pro se* petitioners.

_____

[*] Retired Senior Judge assigned to the Superior Court.

*See id*., at 635 n.20. Nevertheless, it began its discussion of the issue by observing the presumption was created in a decision that cited no authority for it. *See id*., at 633. Furthermore, the presumption has no connection to the statutory language of § 9545(b)(1)(ii). *See id*. In recognizing the incarcerated, *pro se* petitioner exception, the majority concluded "*however reasonable the public record presumption may be with regard to PCRA petitioners generally*, the presumption cannot reasonably be applied to *pro se* PCRA petitioners who are incarcerated." *Id*., at 635 (emphasis altered). Thus, the majority opinion can be read as criticizing the presumption without reaching the issue of its validity.

Similarly, the dissent acknowledged "the presumption may be in tension with the statutory language which governs the newly-discovered-facts exception." *Id*., at 640 (Baer, J., dissenting). "Perhaps this Court should examine the whole of this presumption at some point in a future case when the issue is before us[.]" *Id*. Furthermore, the dissent opined "it may be advisable for this Court to abandon what the [m]ajority has articulated as the public record presumption, in favor of an evidence[]-based criteria which reflects the plain language of the newly-discovered-facts exception." *Id*., at 642 n.6 (citation omitted). Thus, the dissent seems to agree with the majority's critique of the presumption.

I believe an evidence-based test derived from the plain language of § 9545(b)(1)(ii) is the correct approach. However, I acknowledge the presumption, at this time, still controls. I therefore agree with the Majority

that it must be applied in this case. Where I diverge from the Majority is in the application of the incarcerated, *pro se* petitioner exception to the record before us.

The Majority quotes with approval the PCRA court's finding that Brensinger was represented by counsel "since at least 2009, and has had the Pennsylvania Innocence Project working on his case since 2011." Majority Opinion, at 7 (quoting PCRA Court Opinion, 12/23/16, at 6) (footnote omitted)). Unfortunately, the record does not support this finding. Indeed, the Majority later asserts "the record does not specify when Freeman began representing [Brensinger.]" ***Id***., at 10. However, the record is actually quite clear on this issue.

Mark Freeman, Esquire, testified he represented Brensinger for the current petition. ***See*** N.T., PCRA Hearing, 5/2/16, at 26. During cross-examination, the Commonwealth asked if he had agreed to take the case in 2009. He answered, "No." ***Id***., at 30. The Commonwealth then asked if the Pennsylvania Innocence Project ("PIP") "became involved" in 2011. Attorney Freeman responded, "I really don't remember." ***Id***., at 31. Thus, the record is clear that neither Attorney Freeman nor PIP represented Brensinger in 2009.

Marissa Bluestine, Esquire, testified she is the legal director for PIP and confirmed PIP represented Brensinger for the current petition. ***See id***., at 33. After Brensinger contacted PIP, PIP attempted to obtain Brittany Samuels's medical records for review in 2011. ***See id***., at 34. "When we first

started looking at Mr. Brensinger's case, we knew that a key to really deciding *whether or not we could even get involved* would be looking at the medical records themselves because that was such a key part of the conviction." **Id**., at 35 (emphasis supplied). Thus, in 2011, PIP was still determining whether it would get involved with Brensinger's case. The record cannot support a finding that PIP actually represented Brensinger in 2011.

Hoping to bolster the chances of receiving the necessary records to determine if it would represent Brensinger, PIP narrowed its request to brain and tissue slides. **See id**., at 38-39. As of the date of the PCRA hearing, PIP had never successfully obtained any of the requested records. **See id**., at 41-42. Attorney Bluestine testified that she delayed obtaining expert reports in this case until she could present a full medical record to the experts. **See id**., at 47. However, in 2015 she submitted the incomplete medical records to experts for review as she feared there might be timeliness issues. **See id**. As a result, the record is clear that PIP had not agreed to represent Brensinger until 2015 at the earliest.

The most explicit evidence on the issue of representation came from Brensinger. He testified PIP's initial review of his case was a "long process," that involved multiple months-long stages. N.T., PCRA Hearing, 7/15/16, at 33. PIP did not agree to represent him until 2015. **See id**., at 34. This constitutes the only evidence of record regarding when Freeman and PIP agreed to represent Brensinger as attorneys-at law.

- 4 -

Arrayed against this testimony is the PCRA court's finding that Brensinger was represented by Attorney Freeman in 2009, and by PIP since 2011. In support of this finding, the PCRA court references, but does not cite to, the testimony of Brensinger's stepfather, Anthony Tarantino. After reviewing the totality of Tarantino's short testimony, I can find no testimony that supports this finding. The only arguable support comes during the Commonwealth's cross-examination:

Q.     And you retained [Attorney] Freeman in 2009?

A.     He reviewed the case for the first time in 2009, yes.

*Id*., at 15. Placed in the context of Attorney Freeman's and Brensinger's testimony, this statement only confirms that Attorney Freeman agreed to look at this case in 2009. It cannot establish that he had agreed to represent Brensinger at that time.

Indeed, it is clear from all the testimony that Brensinger was only a prospective client, as defined in Pa.R.P.C. 1.18(a), of both Attorney Freeman and PIP. "Absent an express contract, an implied attorney-client relationship will be found if … 3) the attorney expressly or impliedly agreed to render [professional legal assistance to the putative client]; and 4) it is reasonable for the putative client to believe the attorney was representing him." **Cost v. Cost**, 677 A.2d 1250, 1254 (Pa. Super. 1996) (citations omitted). There is no evidence of record capable of establishing that Attorney Freeman or PIP expressly agreed to render professional legal assistance to Brensinger before

2015. Furthermore, Brensinger's testimony makes clear that he did not believe Attorney Freeman or PIP represented him until 2015.

Given this record, I cannot conclude the record supports the PCRA court's finding. The record can only support a finding that Brensinger was *pro se* from as early as 2009 until 2015.

As such, I conclude Brensinger has met the standard set forth in **Burton** and has successfully established an exception to the time-bar. I would vacate the PCRA court's order, and remand for further proceedings.