J-S46003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TONEY TERRY DEBERRY | : | |
| | : | |
| Appellant | : | No. 86 EDA 2018 |

Appeal from the PCRA Order December 22, 2017
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0005529-1987,
CP-09-CR-0005530-1987, CP-09-CR-0005531-1987

BEFORE:  BOWES, J., SHOGAN, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:                          **FILED OCTOBER 16, 2018**

Toney Terry DeBerry appeals from the order that dismissed his petition filed pursuant to the Post Conviction Relief Act ("PCRA").  Also before us is the application to withdraw as counsel filed by Stuart Wilder, Esquire pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).  We deny counsel's application to withdraw, vacate the order dismissing Appellant's petition, and remand for further proceedings.

This Court summarized the facts and evidence underlying Appellant's convictions as follows.

> In the early morning hours of August 8, 1987, [Appellant] broke into a residence known as The Woman's Place, by cutting open and removing a window screen.  The Woman's Place, located in Doylestown Township, is a temporary residential shelter for women and their children, who have been physically, mentally, or sexually abused.  At the time [A]ppellant broke into

the shelter, Pamela Weaver and Alfrea Styles were sleeping in separate first floor bedrooms with their children.

Appellant first entered the room of [Ms.] Weaver and awakened her while holding a knife to her throat. For the next hour Ms. Weaver was sexually assaulted by [A]ppellant. She was repeatedly raped and forced to commit oral sex upon [A]ppellant. When finished, [A]ppellant gagged Ms. Weaver with her own underwear and tied her hands with an electrical cord. Appellant threatened to kill Ms. Weaver if she left the room to notify police. He then exited into a lighted hallway.

Next, [A]ppellant proceeded into [Ms.] Styles' bedroom. Again, [A]ppellant awakened his victim while holding a knife to her throat. At knifepoint, [A]ppellant performed oral sex upon Ms. Styles while she lay in her bed. Appellant then forced Ms. Styles to leave with him. He took her to a secluded area behind the spring house building at the far end of the parking lot and . . . forced her to perform oral sex upon him. Appellant then raped Ms. Styles. During the attack, [A]ppellant and Ms. Styles observed lights flashing in the woods behind their location. During the course of the attack on Ms. Styles, Ms. Weaver had summoned the police. Appellant was soon after apprehended in a wooded area adjacent to the spring house.

At the time of these attacks, [A]ppellant had been placed in the work release program from the Bucks County Rehabilitation Center. Under the rules of the program, [A]ppellant was supposed to return to the center immediately after finishing work. On the night of the attack, [A]ppellant had finished working at approximately midnight. Instead of returning to the center, [A]ppellant went to two separate bars and then proceeded with the attacks at the woman's shelter.

After being apprehended, [A]ppellant was presented to both victims for identification. [Ms.] Weaver positively identified [A]ppellant as the attacker. [Ms.] Styles stated that [A]ppellant looked like the attacker but did not make a positive identification. Ms. Styles later testified at trial that she knew immediately that [A]ppellant was the attacker but feared for her safety if she positively identified him to police in his presence.

Appellant was arrested and charged with rape, involuntary deviate sexual intercourse, kidnapping, terroristic threats, simple

assault, unlawful restraint, false imprisonment, recklessly endangering another person, indecent assault, indecent exposure, burglary, and escape. Aside from the victims' identifications of [A]ppellant, the police were also able to uncover physical evidence linking [A]ppellant to the assaults, such as finding [his] pubic hair in Ms. Weaver's bed clothes.

At the conclusion of his trial, the jury found [A]ppellant guilty of all charges. Following the denial of post-verdict motions, [A]ppellant was sentenced to [an] aggregate . . . of thirty-three-and-one-half to sixty-seven years.

*Commonwealth v. DeBerry*, 636 A.2d 1209 (Pa.Super. 1993) (unpublished memorandum at 1-3).

This Court affirmed Appellant's judgment of sentence in 1989, and our Supreme Court denied his petition for allowance of appeal. *Commonwealth v. DeBerry*, 559 A.2d 961 (Pa.Super. 1989), *appeal denied*, 571 A.2d 380 (Pa. 1989). Appellant filed several petitions for collateral relief between 1992 and 2009, none of which was successful in attacking his convictions or sentence. Appellant also sought and received DNA testing of the hair recovered from the crime scene; the results did not exculpate Appellant. *See* PCRA Court Opinion, 2/6/18, at 2.

Appellant filed the instant PCRA petition on July 16, 2015, alleging that the FBI microscopic hair analyst who testified at his trial "exceeded the limits of science by overstating the conclusions that may be drawn from a positive association between evidentiary hair and a known sample." PCRA Petition, 7/16/15, at 3. Appellant contended that, absent the faulty testimony, he would have been acquitted. *Id*.

The PCRA court appointed counsel, and an amended petition was filed. Counsel was replaced in 2017, and another amended petition was filed. The PCRA court held a hearing on December 14, 2017, and dismissed the petition as untimely on December 20, 2017. Appellant thereafter filed a timely notice of appeal.

In this Court, counsel filed a petition to withdraw and no-merit letter pursuant to **Turner** and **Finley**. Before we consider the substance of the appeal, we must determine whether counsel followed the required procedure, which we have summarized as follows.

> Counsel petitioning to withdraw from PCRA representation must proceed under [**Turner** and **Finley** and] must review the case zealously. **Turner**/**Finley** counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.
>
> Counsel must also send to the petitioner: (1) a copy of the "no merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.
>
> Where counsel submits a petition and no-merit letter that satisfy the technical demands of **Turner**/**Finley**, the court—trial court or this Court—must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.

**Commonwealth v. Doty**, 48 A.3d 451, 454 (Pa.Super. 2012) (cleaned up).

We are satisfied from the review of counsel's application and no-merit letter that counsel has complied with the technical requirements of **Turner** and **Finley**.[1]  Therefore, we will consider the substance of the appeal.

We begin with a review of the applicable law.  "Our standard of review of a trial court order granting or denying relief under the PCRA calls upon us to determine 'whether the determination of the PCRA court is supported by the evidence of record and is free of legal error.'"  **Commonwealth v. Barndt**, 74 A.3d 185, 192 (Pa.Super. 2013) (quoting **Commonwealth v. Garcia**, 23 A.3d 1059, 1061 (Pa.Super. 2011)).

We first consider whether Appellant's petition was timely, as the timeliness of a post-conviction petition is jurisdictional.  **Commonwealth v. Lewis**, 63 A.3d 1274, 1280-81 (Pa.Super. 2013).  To be timely, a petition for relief under the PCRA, including a second or subsequent petition, must be filed within one year of the date the judgment of sentence is final.  For the PCRA court to have jurisdiction to entertain a facially-untimely petition, the petition must allege, and the petitioner must prove, that an exception to the time for filing the petition is met and that the claim was raised within sixty days of the date on which it became available.  42 Pa.C.S. § 9545(b).

Appellant alleged that his petition satisfied the newly-discovered facts exception found at 42 Pa.C.S. § 9545(b)(1)(ii).  He contended that he filed

---

[1] Appellant has not filed a *pro se* response.

the petition within sixty days of discovering through media sources and a letter from the Buck's County Public Defender's Office that some of the evidence offered against him at trial was unreliable. Amended PCRA Petition, 9/8/17, at 4.

As noted above, at Appellant's trial the Commonwealth offered expert testimony that the hair found at the crime scene was consistent with Appellant's hair. In April 2015, the FBI admitted in a press release that analysts offering testimony about microscopic hair comparison "committed widespread, systematic error, grossly exaggerating the significance of their data under oath with the consequence of unfairly bolstering the prosecution's case," in at least 90% of cases. *Commonwealth v. Chmiel*, 173 A.3d 617, 621 (Pa. 2017). Accordingly, Appellant asked that his judgment of sentence be vacated and his convictions overturned. Amended PCRA Petition, 9/8/17, at 4.

The Commonwealth filed a response to the amended petition, contending that Appellant failed to satisfy the newly-discovered facts exception. The Commonwealth argued that the correspondence from the Department of Justice did not contain facts, let alone new ones. Second Motion to Dismiss, 9/13/17, at ¶ 18. The PCRA court agreed, largely based upon our Supreme Court's decision in *Commonwealth v. Edmiston*, 65 A.3d 339 (Pa. 2013).

In **Edmiston**, the petitioner attempted to satisfy the newly-discovered-facts exception by relying upon a report from the National Academy of Science ("NAS") indicating that there was no scientific support for finding a match by microscopic hair comparison analysis that is not also accompanied by mitochondrial DNA analysis. **Id**. at 351. The Court rejected the argument, holding that the facts referenced in the NAS report existed in the public domain for many years (*e.g.*, studies published between 1974 and 2007) and could have been discovered by the petitioner earlier through the exercise of due diligence. **Id**. at 352-53.

Analogizing the situation to that in **Edmiston**, the PCRA court concluded that the publications relied upon by Appellant were merely new sources for previously-knowable facts. PCRA Court Opinion, 2/6/18, at 6. In doing so, the PCRA court overlooked our Supreme Court's decision in **Chmiel**, issued shortly before the PCRA court dismissed Appellant's petition.

In **Chmiel**, the petitioner similarly filed a petition following the 2015 FBI press release and *Washington Post* article about it. **Chmiel**, **supra** at 621. Also similar to the instant case, the PCRA court dismissed the petition as untimely, finding based upon **Edmiston** that filing within sixty days of the publications did not satisfy the newly-discovered facts exception. **Chmiel**, **supra** at 623. Our Supreme Court disagreed, explaining as follows.

> There are two newly[-]discovered facts upon which Chmiel's underlying claim is predicated, both of which were made public for the first time in the *Washington Post* article and the FBI press release. First, the FBI publicly admitted that the

testimony and statements provided by its analysts about microscopic hair comparison analysis were erroneous in the vast majority of cases. The FBI's revelation reverberated throughout the country, marking a "watershed in one of the country's largest forensic scandals," precisely because it constituted a public admission by the government agency that had propounded the widespread use of such scientifically[-]flawed testimony. The revelation was the first time the FBI acknowledged that its microscopic hair analysts committed widespread, systemic error by grossly exaggerating the significance of their data in criminal trials. The *Washington Post* article acknowledged the novelty of the FBI's disclosures: "While unnamed federal officials previously acknowledged widespread problems, the FBI until now has withheld comment because findings might not be representative." Second, the FBI press release included the revelation that the FBI had trained many state and local analysts to provide the same scientifically[-] flawed opinions in state criminal trials.

*Id*. at 625 (citations omitted). Accordingly, the Court held that Chmiel's petition, filed within sixty days of the publication of the press release, satisfied the newly-discovered facts exception. *Id*. at 628.

Appellant, unlike Chmiel, did not file his petition within sixty days of the FBI press release or *Washington Post* article. Rather, it was filed almost three months after the publication of the press release, but within sixty days of a letter sent to Appellant forwarding correspondence from the Department of Justice to the Bucks County District Attorney concerning the testimony of the FBI hair analyst in Appellant's case.[2]

_____

[2] The letter indicates that, upon review of the testimony given in Appellant's case, there was a disagreement between the FBI on the one hand, and the Innocence Project and National Association of Criminal Defense Lawyers on

*(Footnote Continued Next Page)*

The PCRA court, applying *Edmiston* rather than *Chmiel*, did not make a factual determination regarding when Appellant learned of the new facts on which his claim is based, and whether he acted with due diligence in discovering them.[3]  Hence, we cannot determine from the record before us whether the petition was timely filed under *Chmiel*.  Therefore, we vacate the order dismissing Appellant's petition as untimely, and remand for the PCRA court to make a timeliness determination in light of *Chmiel*.[4]

*(Footnote Continued)* ───────────

the other, as to whether there were inappropriate statements made at Appellant's trial concerning hair analysis.

[3] *See Commonwealth v. Burton*, 158 A.3d 618, 638 (Pa. 2017) ("[T]he presumption that information which is of public record cannot be deemed 'unknown' for purposes of subsection 9545(b)(1)(ii) does not apply to *pro se* prisoner petitioners. . . .   After the PCRA court makes a determination as to the petitioner's knowledge, it should then proceed to consider whether, if the facts were unknown to the petitioner, the facts could have been ascertained by the exercise of due diligence, including an assessment of the petitioner's access to public records.") (internal quotation marks omitted).

[4] Should the PCRA court determine that Appellant's petition satisfies the newly-discovered-facts exception under *Chmiel* and *Burton*, the court must then examine the merits of the underlying after-discovered-evidence claim to determine whether a new trial is warranted.  To establish entitlement to a new trial based upon after-discovered evidence, the criminal defendant must show that the additional evidence

> (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Commonwealth v. Padillas*, 997 A.2d 356, 363 (Pa.Super. 2010) (citation omitted).

For the above-stated reasons, we deny counsel's application to withdraw, vacate the PCRA court's order dismissing Appellant's petition, and remand for further proceedings consistent with this memorandum.

Application to withdraw as counsel denied. Order vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/18