J-S61011-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | | |
| v. | | |
| DAMIEN PHILLIPS, | | |
| Appellant | | No. 2160 EDA 2017 |

Appeal from the PCRA Order Entered May 22, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-1100411-1994

BEFORE:  BENDER, P.J.E., BOWES, J., and PANELLA, J.

MEMORANDUM BY BENDER, P.J.E.:　　　　　**FILED NOVEMBER 27, 2018**

Appellant, Damien Phillips, appeals *pro se* from the post-conviction court's May 22, 2017 order denying, as untimely, his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  After careful review, we affirm.

This Court previously summarized the facts of Appellant's underlying convictions, as follows:

> On February 28, 1994, [Appellant] and his accomplice, Antonio Hudson, entered the San Jan Chinese Restaurant on East Adams Avenue in Philadelphia with the intent to commit a robbery. Once inside, [Appellant] ran behind the counter and pushed an employee, Xia Gan Lin, to the floor.  Hudson then pointed his gun at Lin while [Appellant] went into the kitchen.  While in the kitchen, [Appellant] forced Xiaohuang Wang and Kim Wing Lam to the floor, and shot each man in the head at close range. [Appellant] then returned to the front of the store, grabbed Lin, and ordered him to open the cash register at gunpoint.  Hudson grabbed the money out of each cash register, and as he fled,

[Appellant] shot Lin. Wang and Lam were found dead in the kitchen with bullet wounds to their heads, and Lin died ten days later.

On July 26, 1995, a jury convicted [Appellant] of three counts each of first-degree murder and robbery, and one count each of criminal conspiracy and possessing instruments of a crime. On July 27, 1995, the trial court sentenced [Appellant] to three consecutive terms of life imprisonment for the murder convictions, plus a consecutive term of thirty-seven and one-half to seventy-five years' imprisonment for the remaining offenses. This Court affirmed the judgment of sentence on May 30, 1996, and our Supreme Court denied [Appellant's] petition for allowance of appeal on November 1, 1996. [Appellant] did not seek further review with the United States Supreme Court. Consequently, [Appellant's] judgment of sentence became final on January 31, 1997, pursuant to 42 Pa.C.S. § 9545(b)(3) ("[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review[.]").

*Commonwealth v. Phillips*, No. 1048 EDA 2014, unpublished memorandum at 1-2 (Pa. Super. filed March 2, 2015).

Over the ensuing years, Appellant litigated five PCRA petitions, all of which were denied.

On October 23, 2015, [Appellant] commenced the subject proceeding by filing a sixth *pro se* petition. In it he claimed that Dr. Adrienne Sekula-Perlman, who performed autopsies of the victims Wang and Lam, and Dr. Edwin Lieberman, who performed an autopsy of the victim Lin, reported that all of them received perforating gunshot wounds to the head, the range of the gunshots were indeterminate, and there was no evidence of soot or gunpowder on their scalps or clothing. He claimed that those reports were inconsistent with the state's evidence at trial, that the victims were all shot from a range of one to two feet, which was based in part on Hudson's testimony to that [e]ffect, and with a medical examiner's report read into evidence at his preliminary hearing that stated that Wang was shot "in close contact." He claimed that if Dr. Sekula-Perlman were compelled to testify at a PCRA hearing she would confirm those inconsistencies. In support

- 2 -

of this allegation he cited a copy of a Request for Leave to File an Amended Petition which he filed on December 3, 2009, while his fourth PCRA proceeding was still on appeal, attached to which was his proposed Amended Petition in which he presented the same claim. He went on to claim that the Commonwealth was aware of those inconsistencies but suppressed the doctor's report and produced false testimony by the other medical witnesses instead. He claimed that he first learned of those facts while his previous proceeding was still pending and was, therefore, precluded from presenting the claim until its conclusion. He d[id] not explain why he could not have ascertained those facts before, during, or shortly after his trial in time to include it in his first PCRA [petition,] which was timely filed. The only evidence he cited in support of his claim as to Dr. Sekula-Perlman's purported testimony were a series of letters to and from [Appellant's] investigator and the doctor, in which she eventually responded that her reports spoke for themselves and she would not provide a supplemental report, and a forensic article which posited that the lack of residue on a gunshot victim's clothes or body could indicate a range of up to five or six feet. He d[id] not cite anything that would indicate that a shot from one to two feet away would have to have left residue, which he could not claim since its common knowledge that that is not the case. His requested supplement to his brief in his previous appeal proves that this was not a recently discovered fact, but only goes to show that [Appellant] began to concoct this theory in January of 2014. He also neglected to mention that those reports were produced by the Commonwealth both before and at trial.

That petition was followed by an Amended Petition on December 8, 2015, a Second Amended Petition on February 23, 2016, another Second Amended Petition on April 15[, 2016,] and a "Defendant's Amended Petition" on November 4[, 2016]. They consisted of his slanted interpretations of case law on the suppression of evidence and their applicability to his characterization of his "newly discovered evidence[,]" but [he] added no further factual support for the claims. On January 10, 2017, the Commonwealth filed a letter brief in response alleging, and clearly demonstrating, that [Appellant's] petition was untimely and he could not possibly meet any of the PCRA timely filing exceptions to its one[-]year time limit. On January 17[, 2017], the court issued a Pa.R.Crim.P. 907 notice of intent to dismiss [the petition] as untimely[,] after which [Appellant] filed a reply to the [Commonwealth's] letter brief on January 19[,

- 3 -

2017,] objections to the [Pa.R.Crim.P.] 907 notice on January 27[,2017,] and supplemental objections and a motion for leave to file [the] same on May 2[, 2017]. The court issued its order dismissing the petition on May 22[, 2017,] but, upon receipt of a motion for reconsideration pointing out that the body of the order was addressed to a different defendant, the court issued an amended order dismissing the petition on June 14[, 2017]. This [*pro se*] appeal was filed two days later.

PCRA Court Opinion (PCO), 1/22/18, at 4-6.

The PCRA court issued an order on August 11, 2017, directing Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal within 30 days, but Appellant failed to comply. However, on March 16, 2018, Appellant filed with this Court a *pro se* "Application for Relief," claiming that he had never received the Rule 1925(b) order. Appellant explained that, after noticing the filing of that order on the docket, he discovered, upon requesting a log of his prison mail, that a document addressed to him had been received on August 22, 2018, and returned to the sender because it lacked an inmate number. This Court issued an order denying Appellant's application for relief without prejudice to his right to raise the issue in his brief. Upon reviewing the record, which supports Appellant's claim that he did not receive the Rule 1925(b) order, we will not deem his issues waived based on his failure to file a concise statement with the PCRA court.

Herein, Appellant presents six issues for our review. However, before we may examine those claims, we must begin by addressing the timeliness of Appellant's petition, because the PCRA time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the

merits of a petition. ***Commonwealth v. Bennett***, 930 A.2d 1264, 1267 (Pa. 2007). Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final, unless one of the following exceptions set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies:

> **(b) Time for filing petition.--**
>
> (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
>> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>>
>> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>>
>> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Any petition attempting to invoke one of these exceptions "shall be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

As stated *supra*, Appellant's judgment of sentence became final in January of 1997 and thus, his present petition filed in October of 2015 is facially untimely. For this Court to have jurisdiction to review the merits

thereof, Appellant must prove that he meets one of the exceptions to the timeliness requirements set forth in 42 Pa.C.S. § 9545(b).

Appellant first contends that he has satisfied both the governmental interference exception and the newly-discovered fact exception, based on 'new evidence' that Dr. Sekula-Perlman's autopsy reports contradict the Commonwealth's theory, and the testimony provided by Dr. Lieberman, that Appellant shot the victims at close range while they were lying on the ground. Appellant's Brief at 26. Appellant claims that Dr. Sekula-Perlman's report instead shows "that the victims were shot from a distance and [were] standing when they were shot[,]" because the victims had no "soot or powder residue present" on their bodies. *Id.* at 30, 20. Appellant avers that the Commonwealth knew of the "exculpatory fact of the victims['] being shot from a distance[,]" but "it did not provide this information to [Appellant] during his trial[,] or correct the misleading testimony provided to the jury." *Id.*

However, the Commonwealth argues, and Appellant concedes, that "[t]he autopsy reports [Appellant] addresses were marked and moved into evidence at [Appellant's] 1995 trial." Commonwealth's Brief at 15; *see also* Appellant's Brief at 31 (admitting that the Commonwealth "turned over the autopsy [r]eports prior to trial"). Appellant nevertheless contends that the information contained in those reports constitutes 'new facts' because the

- 6 -

Commonwealth "did not disclose the truth of the raw data or its significance."[1] Appellant's Brief at 31. We find this argument unconvincing. As the Commonwealth stresses, it "had no burden to assist [Appellant] in his review of the evidence or his development of a defense[,]" especially where Appellant "had the assistance of two attorneys at his trial."[2] Commonwealth's Brief at 16 n.9.

We also reject Appellant's argument that his "claim is centered upon Dr. [Sekul-]Perlman['s] reviewing the trial record and interpreting her reports - then stating for the first time - that the Commonwealth's theory of the case and witnesses['] testimony [were] inconsistent with her reports." Appellant's Reply Brief at 13. According to Appellant, Dr. Sekul-Perlman made this

---

[1] In support of his argument that the facts established by the 'raw data' provided in the autopsy reports were unknown to him, Appellant relies on this Court's unpublished decision in **Commonwealth v. Hale**, No. 2940 EDA 2014, unpublished memorandum (Pa. Super. filed September 23, 2016). However, citing an unpublished decision by this Court is impermissible under our Internal Operating Procedures. **See** 210 Pa. Code § 65.37(A) ("An unpublished memorandum decision shall not be relied upon or cited by a Court or a party in any other action or proceeding…."). Therefore, we will not address Appellant's claims premised on **Hale**.

[2] The fact that Appellant was counseled, and that the autopsy reports were provided to him, makes his reliance on **Commonwealth v. Burton**, 158 A.3d 618 (Pa. 2017), misplaced. There, our Supreme Court held "that the presumption that information which is of public record cannot be deemed 'unknown' for purposes of subsection 9545(b)(1)(i) *does not apply* to *pro se* prisoner petitioners." **Id.** at 638 (emphasis in original). Instantly, **Burton** is inapplicable because the autopsy reports were not simply public records, but they were actually turned over to Appellant, who was also counseled at that time. Thus, **Burton** does not support Appellant's position that the 'true nature' of the autopsy reports were unknown to him.

statement in two letters that she sent to him, which he attached to his PCRA petition. However, our review of those letters belies Appellant's interpretation of them. In the first, dated December 1, 2009, Dr. Sekul-Perlman states that she has reviewed materials sent to her by Appellant, and that she is "not able to issue any sort of additional written statement in this matter as [her] report speaks for itself." **See** Appellant's PCRA Petition, 10/23/15, at Exhibit F. In Dr. Sekul-Perlman's second letter to Appellant, which is undated, she states: "I am in receipt of your letter dated September 20, 2013. Please have your investigator contact me again…. I also need the name of the Attorney General in Philadelphia who handled your case." **See id.** at Exhibit G. Nothing in these two letters indicates that Dr. Sekul-Perlman is "stating the testimony of Dr. Lieberman and other witnesses [was] inconsistent with her factual findings." Appellant's Reply Brief at 5. In any event, Appellant has also failed to prove that his October 23, 2015 petition was filed within 60 days of his receipt of Dr. Sekul-Perlman's second, undated letter.

In sum, because Appellant had Dr. Sekula-Perlman's autopsy report at the time of his trial, he cannot now contend that the 'truth' of the information contained in that report was unknown to him, or that it could not have been discovered with due diligence. Additionally, Dr. Sekula-Perlman's letters to Appellant did not state any 'new fact' pertaining to her report that would invoke the exception of section 9545(b)(1)(ii). Appellant also cannot demonstrate that the Commonwealth interfered with his ability to raise a claim regarding the autopsy report earlier, as the Commonwealth provided that

report to Appellant prior to trial. Accordingly, Appellant's argument does not satisfy either of the timeliness exceptions of section 9545(b)(1)(i) or (ii).

Appellant next contends that he satisfies the newly-discovered fact exception based on information that Detective Thomas Augustine, who participated in the investigation of this case, had "played a significant role in the wrongful conviction of a Mr. Anthony Wright." Appellant's Brief at 53. Essentially, Appellant claims that Detective Augustine fabricated evidence, falsified reports, and coerced statements from witnesses in Wright's case and, therefore, the detective likely acted with the same "malfeasance" in Appellant's case. *See id.* at 53, 54. Appellant contends that he did not discover the facts of Detective Augustine's misconduct in Wright's case until September 20, 2016, when "Wright initiated a [l]awsuit against the City of Philadelphia[,] including Detective Augustine." *Id.* at 54.

However, Appellant does not explain why he never presented this issue to the PCRA court. The record demonstrates that Appellant filed several documents with the PCRA court after he purportedly became aware of Wright's allegations against Detective Augustine, including an amended petition on November 4, 2016, as well as two responses to the court's Rule 907 notice, filed on January 19th and 27th of 2017. Appellant did not mention his discovery of this 'new evidence' of Detective Augustine's misconduct in any of those filings. Accordingly, he has waived this claim for our review. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

- 9 -

In conclusion, Appellant's PCRA petition is patently untimely and, for the reasons stated *supra*, he has not demonstrated the applicability of any timeliness exception. Therefore, the court properly denied his petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/27/18