J-S13004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT ALLEN BENNEY, | |
| Appellant | No. 168 WDA 2018 |

Appeal from the PCRA Order Entered January 17, 2018
In the Court of Common Pleas of Washington County
Criminal Division at No(s): CP-63-CR-0001104-2008

BEFORE:  BENDER, P.J.E., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:               **FILED  MAY 10, 2019**

Appellant, Robert Allen Benney, appeals *pro se* from the post-conviction court's January 17, 2018 order dismissing his second petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We affirm.

The PCRA court summarized the factual background of this case as follows:

> This case arises out of a criminal complaint filed against [Appellant] on April 17, 2008, whereby [Appellant] was arrested and charged with Burglary, Criminal Conspiracy, Robbery, Rape, Involuntary Deviate Sexual Intercourse, Aggravated Assault, Terroristic Threats, Unlawful Restraint, [and] Theft by Unlawful Taking.
>
> These charges were filed as a result of an incident on March 22, 2008, when [Appellant] convinced his younger, half-brother,

_____

[*] Retired Senior Judge assigned to the Superior Court.

Kevin Partozoti, to accompany him on what [Appellant] claimed would be a burglary of an unoccupied house of a man who owed him money. The house was actually occupied by [the victim], an elderly widow. [Appellant] was familiar with [the victim] and the house from a remodeling project that he had worked on in her home. [The victim] awoke to the sound of Mr. Partozoti['s] banging on the back door. When she retreated from the back door, [Appellant] entered through the front door and accosted her. [Appellant] forced his way into [the victim's] home and disabled her telephone.

[Appellant] subsequently led Mr. Partozoti into the home and directed Mr. Partozoti to search specific rooms in the home to look for valuables, while [Appellant] remained in the kitchen with [the victim]. [Appellant] forced a firearm into [the victim's] mouth, forced her to put his penis in her mouth, and told her to "suck on this, bitch." [Appellant] raped [the victim] in the kitchen, forcing her to lower her pants, pouring vinegar down her back, and placing a plastic bag over his penis, prior to penetrating her anus with his penis. [The victim] was later tied to a chair in the basement of her home, where [Appellant] defiled her by pouring spices and cat litter all over her. [Appellant] continued to abuse and humiliate [the victim] until Mr. Partozoti yelled down that he had found some silver. Mr. Partozoti then convinced [Appellant] to break off his assault and the burglars finally left the home.

PCRA Court Opinion (PCO), 6/26/2018, at 1-2 (footnotes omitted).

In February of 2009, a jury convicted Appellant of all of the offenses with which he was charged. On May 21, 2009, the trial court sentenced Appellant to an aggregate term of 47-94 years' imprisonment. This Court affirmed Appellant's judgment of sentence on June 14, 2011. *See Commonwealth v. Benney*, 31 A.3d 744 (Pa. Super. 2011). Subsequently, Appellant filed a petition for allowance of appeal with our Supreme Court, which was denied on October 25, 2011. *See Commonwealth v. Benney*, 31 A.3d 290 (Pa. 2011). Thus, Appellant's judgment of sentence became final on January 23, 2012, when the time for filing a petition for writ of *certiorari*

to the U.S. Supreme Court expired. **See** 42 Pa.C.S. § 9545(b)(3) (stating that a judgment of sentence becomes final at the conclusion of direct review or the expiration of the time for seeking the review); U.S.Sup.Ct.R. 13 (providing that "[a] petition for a writ of *certiorari* seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review").

On December 30, 2017, Appellant filed *pro se* his second PCRA petition.[1,2] On January 17, 2018, the PCRA court entered an order dismissing the petition.[3] Appellant filed a timely notice of appeal on January 29, 2018.

_____

[1] Review of Appellant's first PCRA petition concluded on November 1, 2017. **See Commonwealth v. Benney**, 176 A.3d 836 (Pa. 2017) (denying Appellant's petition for allowance of appeal).

[2] Although Appellant's petition was not docketed until January 5, 2018, it is dated December 30, 2017. "Pursuant to the prisoner mailbox rule, we deem a document filed on the day it is placed in the hands of prison authorities for mailing." **Commonwealth v. Patterson**, 931 A.2d 710, 714 (Pa. Super. 2007) (citation omitted). Because Appellant's petition appears to lack a certificate of service or postmark, we cannot definitively determine when he mailed it. However, we note that December 30, 2017 was a Saturday, and Monday, January 1, 2018, was a holiday with no mail delivery. Since it does not affect our disposition, we will simply assume Appellant mailed his petition on December 30, 2017.

[3] The PCRA court neglected to give a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition, but Appellant has not complained of this omission. **See Commonwealth v. Taylor**, 65 A.3d 462, 468 (Pa. Super. 2013) ("The failure to challenge the absence of a Rule 907 notice constitutes waiver. Moreover, even if the issue is raised, where the petition is untimely, it does not automatically warrant reversal.") (citations omitted).

On March 19, 2018, the PCRA court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and he timely complied.[4] Thereafter, the PCRA court issued its Rule 1925(a) opinion, stating that Appellant's petition was untimely and that none of the timeliness exceptions to the PCRA applied to his claims. *See* PCO at 20.

On appeal, Appellant raises two issues for our review:

1. Did the PCRA court err in determining that Appellant did not meet the after-discovered facts exception to the PCRA timeliness requirements [for] his claim of [p]rosecutorial [m]isconduct, where Appellant discovered evidence that the Commonwealth presented false evidence regarding a pretrial identification?

2. Did the PCRA court err in determining [that] Appellant did not meet the after-discovered facts exception to the PCRA timeliness requirements [for his] claim that the Commonwealth destroyed potentially exculpatory fingerprint evidence, where Appellant discovered that a Commonwealth witness lied about the analysis/results of the fingerprint evidence?

Appellant's Brief at 4.

Initially, we note that our standard of review regarding an order denying post-conviction relief is whether the findings of the court are "supported by the record and free of legal error." *Commonwealth v. Albrecht*, 994 A.2d 1091, 1093 (Pa. 2010) (citations omitted). We must begin by addressing the timeliness of Appellant's petition because "[t]he PCRA's time restrictions are

_____

[4] The PCRA court instructed Appellant to file his Rule 1925(b) statement no more than 21 days from the date of its order, *i.e.*, on or before April 9, 2018. Appellant's Rule 1925(b) statement was not docketed until April 12, 2018; however, it contains a certificate of service dated April 5, 2018. Thus, we deem Appellant's Rule 1925(b) statement timely filed pursuant to the prisoner mailbox rule. *See Patterson*, *supra*.

jurisdictional in nature. … Without jurisdiction, we simply do not have the legal authority to address the substantive claims." *Id.* (citations omitted). With respect to timeliness, the PCRA provides, in pertinent part, the following:

**(b) Time for filing petition.--**

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Additionally, at the time Appellant filed his petition, Section 9545(b)(2) required that any petition attempting to invoke one of these exceptions "be filed within sixty days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).[5]

---

[5] A recent amendment to Section 9545(b)(2), which became effective on December 24, 2018, changed the language to require that a petition "be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

In this case, as stated above, Appellant's judgment of sentence became final on January 23, 2012. Therefore, his present petition, filed on December 30, 2017, is patently untimely, and Appellant must meet one of the exceptions to the timeliness requirement set forth in Section 9545(b)(1)(i)-(iii), *supra.*

In Appellant's first issue, he argues that the PCRA court erred in determining that he did not meet the newly discovered fact exception to the timeliness requirement "where Appellant discovered evidence that the Commonwealth presented false evidence regarding a pretrial identification[.]" Appellant's Brief at 4.[6] By way of background, Appellant explains that the victim identified and distinguished between her assailants — Mr. Partozoti and Appellant — by Mr. Partozoti's unique voice. **See id.** at 13-14. Appellant states that the Commonwealth presented evidence at trial that it had played a voice recording for the victim, who then was able to identify Mr. Partozoti by his unique voice as the assailant who wore a dark-colored sweatshirt during the incident versus Appellant who wore a light-colored sweatshirt. **See id.** at

---

[6] Appellant refers to Section 9545(b)(1)(ii) as the 'after discovered facts' exception to the timeliness requirement. **See** Appellant's Brief at 4, 13. However, our Supreme Court has stated that "the phrase 'newly-discovered fact' timeliness exception … most accurately reflects the requirements of [S]ection 9545(b)(1)(ii), and is the least likely to be confused with the after-discovered evidence eligibility-for-relief provision set forth in [S]ection 9543(a)(2)." **Commonwealth v. Burton**, 158 A.3d 618, 628 (Pa. 2017). We therefore refer to Section 9545(b)(1)(ii) as the newly discovered fact exception.

13-14.[7]  According to Appellant, based on this identification, police charged Appellant as the assailant in the light-colored sweatshirt who possessed the gun and sexually assaulted the victim.  **See id.** at 14 (citing N.T. Trial, 2/2/2009-2/5/2009, at 224-25).  However, Appellant avers that he subsequently "filed [Right to Know] requests to [the] Washington City Police Department (WPD) and Sergeant [Christopher] Luppino[8] regarding procedures they use in performing voice identifications.  The responses established that WPD and Sergeant Luppino have never performed these type[s] of identification procedures." **Id.** at 16 (emphasis in original; citations omitted).[9]  Thus, Appellant claims that "this pretrial identification of the codefendant was not performed and therefore not available for Sergeant Luppino to use as asserted." **Id.** at 10.[10]

Appellant asserts that this claim meets the newly discovered fact exception pursuant to Section 9545(b)(1)(ii).  He claims that "[e]vidence [of]

_____

[7] The victim had difficulty physically identifying her assailants because they wore masks.  **See** Trial Court Opinion (TCO), 4/29/2010, at 15.

[8] Sergeant Luppino testified that he is a sergeant for the WPD's detective unit, and had investigated and filed the charges in this case.  N.T. Trial at 213-14.

[9] Specifically, Sergeant Luppino's responses indicate that he does not perform voice line-ups or voice show-ups.  **See** Exhibits R and V to PCRA Petition, 1/5/2018; **see also** Exhibits F and G to Appellant's Brief.

[10] Appellant also discusses Right to Know requests he made with the district attorney's office; however, he acknowledges that he did not receive its responses until after he filed the instant appeal.  **See** Appellant's Brief at 17-18.  Therefore, we do not address those responses.

this claim was not available to Appellant or counsel based upon the lack of accessibility/entitlement. There was not enough evidence to alert counsel to research this claim. Therefore, the facts of this claim could not have been learned by the exercise of due diligence." *Id.* at 24. Further, he says "[t]hrough due diligence, Appellant *pro se*, did not obtain evidence to support this claim until after the first PCRA petition was pending appellate review." *Id.* (emphasis in original).

> This Court has explained:
>
> The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced. Additionally, the focus of this exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts.

*Commonwealth v. Fennell*, 180 A.3d 778, 782 (Pa. Super. 2018) (citation and emphasis omitted).

Appellant's claim does not meet the newly discovered fact exception. At the outset, the Commonwealth played part of the recording of Mr. Partozoti's voice at trial, and the victim identified the voice as belonging to the individual in the dark-colored sweatshirt. *See* N.T. Trial at 204-05. The recording was of Mr. Partozoti's interview with police. *Id.* at 205. Thus, Appellant's suggestion that such a recording does not exist befuddles us. Further, to the extent Appellant contests the manner in which the victim was presented with

the recording and who was involved in that process, Appellant could have inquired about these details earlier in the exercise of due diligence, such as during the victim's cross-examination. We reiterate that he has known about the recording and the victim's resulting identification since at least the time of trial. Thus, we conclude that Appellant's first claim does not meet the newly discovered fact exception.

In Appellant's second issue, he asserts that the PCRA court erred in dismissing his claim that "the Commonwealth destroyed potentially exculpatory fingerprint evidence and Sergeant Luppino falsely testified regarding this evidence…." Appellant's Brief at 26 (unnecessary emphasis and capitalization omitted). Appellant explains that Sergeant Luppino testified at trial that "he took a piece of duct tape from the chair that [the victim] was tied to[,]" and "developed a partial [finger]print off of that duct tape." *Id.* at 28 (citations omitted). According to Appellant, Sergeant Luppino said he examined the fingerprint, determined he could only identify a 'loop pattern' within the print, and concluded that the fingerprint could not positively identify anyone. *Id.* Appellant further relays that "Sergeant Luppino testified that he *did* send the duct tape with the print to the forensic state police, like the rest of the forensic evidence collected. He did not receive any report on the findings, but discussed the results verbally with forensic state police." *Id.* at 29 (emphasis in original; citations omitted). Subsequently, though, Appellant alleges that he filed several Right to Know requests, from which he learned the following:

> Sergeant Luppino was <u>not</u> qualified to analyze fingerprints, or determine its evidentiary value. He was an evidence technician, in which he was only qualified to collect and submit evidence to the proper analytical fields. This then showed he was not qualified to have compared prints "many times." Forensic state police disclosed that neither Sergeant Luppino, nor his police department, ever sent any duct tape evidence with a fingerprint to them, in the applicable year. In addition, they disclosed that it is *contrary* to forensic policies for examiners to discuss results only verbally, and there would be reports, regardless of the results.

*Id.* at 30 (emphasis in original; internal citations omitted). He thereby asserts this claim meets the newly discovered fact exception and that he could not have ascertained this fact earlier by exercising due diligence because he "did not suspect any falsehoods of this claim's magnitude." *Id.* at 31 (citation omitted).

Again, Appellant's argument does not meet the newly discovered fact exception. At trial, the following discussion took place regarding the duct tape:

> [The Commonwealth:] Did you have any findings in the basement?
>
> [Sergeant Luppino:] At that time[,] I took a piece of duct tape. We have sometimes success [*sic*] with duct tape because … you take a roll of duct tape, obviously you have to touch the other side to pull the duct tape off. So what we do is a process called sticky side powder and we actually print the sticky side of the tape and we have a little success on prints. The problem with this duct tape was when the victim took it off, as we all know[,] that duct tape tends to almost stick together. Once the tape sticks together[,] even when you pull it off[,] the prints are ruined. So there was a small section of duct tape that I actually packaged and took back to the station for later process[ing].
>
> [The Commonwealth:] Were you at all successful with that?
>
> [Sergeant Luppino:] I got a partial print. When I say partial print, it wasn't a print that I felt I could talk to an expert about. It wasn't

good enough to send into the AFUS system.[11] The AFUS system is a system where you send a fingerprint into. If you've ever[] been arrested, then that's how you find a match. I couldn't find any centers on the print. The centers are points, is how you compare fingerprints. Normally[,] the[re] are anywhere between [7] and 12 points. I think there was one point on this partial. So about all you could tell from the print was the loop pattern of the fingerprint. That's the only thing to compare. So you couldn't match it up to anybody's fingerprint. The most you can say is: you know what, that is their loop pattern. So it ended up not being any good.

[The Commonwealth:] You didn't have enough to compare it?

[Sergeant Luppino:] No.

[The Commonwealth:] You've done this comparison on fingerprints before?

[Sergeant Luppino:] Sure. Many times.

[The Commonwealth:] In doing this[,] did you find any other fingerprints or useable prints in the home?

[Sergeant Luppino:] No. For one, the victim had initially told the officers and Lieutenant [Daniel] Stanek when he reinterviewed her that day, that the assailants were wearing gloves. You're not going to find fingerprints when they're wearing gloves.

*** 

[Appellant's Attorney:] Your testimony was there was a partial print on the duct tape that was not useable?

[Sergeant Luppino:] Correct.

[Appellant's Attorney:] Did you send it to an expert like you did the DNA?

[Sergeant Luppino:] Yes. I did send it to an expert. I sent it to Trooper [Robert] Liebhart, Forensic State Police.

[Appellant's Attorney:] Did he give you a report?

_____

[11] We believe Detective Luppino meant to refer to the Automated Fingerprint Identification System (AFIS).

[Sergeant Luppino:] No, he did not.

[Appellant's Attorney:] Did he discuss it with you verbally?

[Sergeant Luppino:] Yes.

[Appellant's Attorney:] There was no blood at the scene?

[Sergeant Luppino:] No.

[Appellant's Attorney:] And the rest of the home wasn't dusted for fingerprints?

[Sergeant Luppino:] It was unnecessary because of the gloves.

[Appellant's Attorney:] The glove you found[,] was that sent to an expert?

[Sergeant Luppino:] It was.

[Appellant's Attorney:] And the DNA came back inconclusive?

[Sergeant Luppino:] Correct.

N.T. Trial at 215-17, 228-29.

Appellant has not demonstrated that he could not have learned of the circumstances surrounding the examination of the duct tape earlier with the exercise of due diligence. *Fennell*, 180 A.3d at 782. Sergeant Luppino testified at trial that he was assigned to the detective unit of the WPD, he collected and submitted evidence from the crime scene, and he determined that the duct tape did not have a useable fingerprint. *See* N.T. Trial at 213-17, 228-29. If Appellant had concerns about Sergeant Luppino's qualifications for making that determination, he could have inquired about his training and certifications then. As far as whether Sergeant Luppino or the police department sent the duct tape to the forensic state police for testing, Appellant similarly could have investigated that assertion earlier, along with

the forensic state police's reporting policies. Further, with respect to Appellant's claim that the forensic state police disclosed that it did not receive duct tape evidence from either Sergeant Luppino or the WPD, it is unclear to us if the Right to Know response that Appellant relies on even contradicts Sergeant Luppino's testimony at trial. The Right to Know response, which was from the Pennsylvania State Police, expressed that "there were no submissions for forensic testing involving fingerprints on duct tape submitted by [the WPD] and/or [Sergeant] … Luppino between January 200 [*sic*] thru December 2008." Exhibit O to Appellant's Brief. At trial, Sergeant Luppino did not testify that the fingerprints were submitted for forensic testing, but instead conveyed that he sent the duct tape to the forensic state police. N.T. Trial at 228. Thus, Appellant has not proven that Sergeant Luppino falsely testified regarding this evidence. Based on the foregoing, we conclude that Appellant has not met the newly discovered fact exception for this claim. Accordingly, we affirm the PCRA court's order dismissing Appellant's second PCRA petition.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/10/2019

- 13 -