J-S06037-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES GREEN | : | |
| | : | |
| Appellant | : | No. 92 EDA 2020 |

Appeal from the PCRA Order Entered November 22, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0105281-1998

BEFORE: PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: Filed: March 25, 2021

James Green (Green) appeals from the order entered in the Court of Common Pleas of Philadelphia County (PCRA court) dismissing without a hearing his third petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. The Commonwealth asks that this case be remanded for an evidentiary hearing because, after the PCRA court dismissed Green's petition, a document was found in its files that was not disclosed to Green at the original hearing or in the PCRA proceeding. We vacate the PCRA court's order and we remand for an evidentiary hearing. We deny the Commonwealth's motion as moot.

---

[*] Retired Senior Judge assigned to the Superior Court.

**I.**

**A.**

This case arises from the December 20, 1996 shooting death of Ronald Spearman (Spearman).  At approximately 5:00 p.m., four men, including Green and Twain Bryant (Bryant), confronted Spearman and Robert Willis (Willis) while they walked with Willis' ten-year-old son on Regent Street in Philadelphia.  Green shot his automatic firearm at Spearman at close range, striking him in the back of the head and killing him.  Before police arrived, Green had fled the scene.

Almost one year later, on December 5, 1997, Police arrested Green for Spearman's homicide.  During his interview with detectives, Green admitted to shooting Spearman but claimed that he acted in self-defense.  Green also maintained that Spearman had threatened him and Bryant with a gun earlier in the afternoon on the day of the shooting.

At Green's October 1999 jury trial, Willis testified as a witness for the Commonwealth and stated that he did not anticipate any violence as he walked with his son and Spearman up the street towards Spearman's mother's home.  (**See** N.T. Trial, 10/21/99, at 69-72).  Willis noticed a few men standing in the doorway of a house as they walked past, but Spearman did not acknowledge them.  (**See id.** at 71, 74).  Willis heard footsteps approach them from behind and turned around quickly to face a group of men, including Green and Bryant, and noticed that Green had already drawn his gun.  (**See**

*id.* at 74-76).  Bryant asked Spearman:  "What was that shit you was saying," and told Green to "shoot his ass."  (*Id.* at 77).  Green then shot in the direction of Spearman and Willis' son, striking and killing Spearman.  (*See id.* at 78).  The men fled and Willis saw a gun laying on the ground next to Spearman.  (*See id.* at 80-81).  Willis continued past Spearman to check on his son around the corner.  (*See id.* at 81-82).  When he returned to Spearman's body, the firearm was gone.  (*See id.* at 81-82, 95-96).

Willis further testified that he was presently incarcerated for an unrelated 1983 murder and that police uncovered his involvement in that homicide as a result of their investigation in this case.  (*See id.* at 84-85).  On direct examination, Willis testified regarding his cooperation with the Commonwealth in connection with Green's trial:

> Q: Any deal been made with you and the District Attorney's Office to testify about this?
>
> A: No.
>
> Q: Was there any deals discussed with you at all on the 20th of December, 1996?
>
> A: No.
>
> Q: Was there anything discussed about your murder case at that time on that date?
>
> A: No.

(*Id.* at 85-86).

On cross-examination, defense counsel elicited the following testimony:

Q: . . . you said you gave a statement about an hour [after the shooting] to the police, hour and a half, whatever it was, later; is that correct?

A: Yes.

Q: And you told them the truth, right?

A: No, I didn't.

Q: You told them the truth, didn't you?

A: No.

Q: Well, what did you lie about?

A: About who the people— who the shooters were.

Q: Okay.  What, were you protecting them?

A: Yes.

Q: Why?

A: 'Cause I was afraid of 'em.

Q: You were afraid of 'em?

A: Yes.

Q: . . . Why aren't you afraid of em' now?

A: 'Cause I'm in jail, I guess.

Q: Well, you are gonna get out soon, aren't you?

*    *    *

A: I don't know if I am gonna get out.

Q: Well, they offered you a deal.  Didn't they offer you probation on your murder case?

A: I never heard nothing like that in my life.

Q: Never offered you a deal?

A: No, they didn't.

Q: Oh. Your lawyer hasn't had conversations with the District Attorney about—

A: My lawyer doesn't even talk to me at all.

(*Id.* at 88-89).

Detective James Burke, who interviewed Green following his arrest, read his statement into the record at trial. (*See* N.T. Trial, 10/22/99, at 23-24). Green claimed that on the day of the shooting, at about 12:45 p.m., there was a prior confrontation during which Spearman threatened him and Bryant with a gun. (*See id.* at 31-32). When Spearman walked up the street later that day with Willis and a young boy, Bryant asked him why he pulled a gun earlier. (*See. id.* at 33). According to Green, Spearman "had a gun in his right hand and he was shooting at [him]" from a distance of eight feet. (*Id.* at 33). Green maintained that Spearman fired three shots before he returned fire with the gun he had retrieved from his aunt's house at around 4:00 p.m. that day. (*See id.* at 33-34). Green averred that he took the gun from where he typically stored it because he "was scared for [his] life." (*Id.* at 34).

Officer William McKenzie testified that the evidence recovered at the scene of the shooting was fired from three different firearms, and that there might have been five guns involved in the shooting. (*See* R239a–R240a, R246a.). The .380s were fired from one gun, the 9MMs from another, and the

.22 from a third. (**See** R.234a–R235a, R237a.). He could not determine the source of the bullet recovered from the street or from Spearman's head, but he believed the latter was fired from a 9MM, .38 special, or a .380. (**See** R237a, 240a–R242a, R246a–R247a).

At the conclusion of trial, the jury found Green guilty of first-degree murder, criminal conspiracy and possession of an instrument of a crime.[1] On May 9, 2000, the trial court sentenced Green to an aggregate term of life imprisonment. This Court affirmed Green's judgment of sentence on July 30, 2001, and he did not file a petition for allowance of appeal with our Supreme Court. Green unsuccessfully litigated a timely first PCRA petition and filed a second PCRA petition, which he later withdrew.

**B.**

On February 17, 2016, Green, acting *pro se*, filed the instant PCRA petition. Counsel subsequently filed an amended petition. In that petition, Green maintains the Commonwealth violated **Brady v. Maryland**, 373 U.S. 83 (1963),[2] by failing to disclose that it had entered a plea agreement with Willis prior to his trial, pursuant to which it exercised leniency towards Willis

---

[1] 18 Pa.C.S. §§ 2502, 903 and 907.

[2] The United States Supreme Court held in **Brady** that the prosecution's suppression of evidence favorable to the defendant violates due process of law if the evidence is material to his guilt or to the punishment imposed. **See Brady**, **supra** at 87.

in the 1983 murder case[3] in exchange for his testimony at the trials of Green and Bryant.

In support, Green points to Willis' testimony at Bryant's April 2001 trial:

Q: At the time you testified [in Green's case] did you have a deal with the Commonwealth?

A: I can't remember if we had a deal then or afterwards.

Q: Did you plead guilty to a charge of murder after the trial of James Green?

A: I can't remember. I think it was after. Was it after?

Q: At that time—

A: No. It was before. I think it was before.

Q: At that time you pled guilty, did you agree to testify in the case of the Commonwealth versus Twain Bryant in exchange for your leniency on your trial; is that correct?

A: Yes.

* * *

Q: In exchange for your testimony in the case of Commonwealth versus Twain Bryant, at the preliminary hearing and trial, you agreed to testify in exchange for your testimony you were requesting leniency from the court and the Commonwealth; is that correct?

A: That's correct.

Q: In a murder trial; am I correct?

---

[3] Willis was sentenced to a term of eight years' probation in connection with his guilty plea in the 1983 murder case on May 21, 2001. (**See** Commonwealth's Brief, at 3).

A: Yes.

(PCRA Petition, 2/17/16 at Exhibit A, N.T. Bryant Trial, 4/24/01, at 4-5).[4]

Green explained that he did not file a PCRA petition raising this claim earlier because he previously lacked evidence of Willis' agreement with the Commonwealth and that he only recently obtained a copy of the notes of testimony from Bryant's trial. (**See** Amended PCRA Petition, 1/02/18, at 13-14). In light of the fact that his PCRA petition was facially untimely,[5] Green

_____

[4] Bryant was acquitted of the charges against him arising from the Spearman homicide on April 25, 2001. (**See** PCRA Court Opinion, 5/19/20, at 2 n.2).

[5] A PCRA petition is timely if it is filed within one year of the date the judgment of sentence becomes final. **See** 42 Pa.C.S. § 9545(b)(1); **see also Commonwealth v. Albrecht**, 994 A.2d 1091, 1094 (Pa. 2010). A judgment of sentence becomes final at the conclusion of direct review, including discretionary review, in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review. **See** 42 Pa.C.S. § 9545(b)(3). Because Green's judgment of sentence became final on August 30, 2001, his petition filed on February 17, 2016, was facially untimely.

A PCRA petition can still be maintained if the petition successfully alleges and proves one or more of the following:

> (i) the failure to raise this claim previously was the result of interference by government officials with presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court

pled that it could still proceed because his claim fell within both the governmental interference exception and the newly-discovered fact exception to the PCRA's time-bar.

The Commonwealth initially moved to dismiss Green's PCRA petition. On October 22, 2019, the PCRA court issued notice of its intent to dismiss the petition without a hearing. *See* Pa.R.Crim.P. 907(1). On November 22, 2019, the PCRA court dismissed Green's petition as untimely because it did not fall within either the governmental interference exception or the newly-discovered fact exception to untimeliness. The PCRA court held that the governmental interference exception did not apply because Green had not shown due diligence in discovering this claim because, presumptively, he had access to the Bryant transcripts in April 2001 while he did not bring his claim until 2017. It also held that Green could not avail himself of the newly-discovered fact exception because the undisclosed plea deal would be used to solely impeach Willis' credibility.

---

of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

If an exception applies, a petition must be filed within sixty days of the date the claim could have been presented. *See id.* at § 9545(b)(2) (sixty-day filing deadline applicable when Green filed his PCRA petition before it was extended to one year).

Green timely appealed. The PCRA court did not order Green to file a Rule 1925 statement; it filed an opinion on May 19, 2020. *See* Pa.R.A.P. 1925(a)-(b).

## C.

On January 15, 2021, the Commonwealth filed an application with this Court seeking remand to the PCRA court for an evidentiary hearing. Precipitating this filing was new defense counsel's request to review the Commonwealth's trial files for Green and Bryant in the Spearman murder case and in Willis' unrelated 1983 homicide case. Review of Willis' file by the Commonwealth revealed a document potentially evidencing that Willis did have an agreement for a reduced sentence before he testified at Green's trial. The Trial Disposition Sheet reads:

> [Willis] was present and a lookout in a murder in 1983. [Willis] rearrested in 1998. Shooter confessed to murder. [Willis] 17 years old at the time. [Willis] AGREE to testify in two murder trials as an eyewitness pursuant to a written Memorandum of Agreement. [Willis] testified truthfully in Twain Bryant and Eugene (Junior) Green murder cases.

(Homicide Unit Trial Disposition Sheet for Willis, undated; Commonwealth's Brief, Appendix X).[6] This document indicates that Willis pled guilty to third-degree murder in the 1983 homicide case. It lists as the reason for the

_____

[6] Green's nickname was "Junior." (*See* N.T. Trial, 10/22/99, at 29).

deviation from the sentencing guidelines for Willis' term of probation as "Memo of Agreement in Two other murder cases-successfully."  (**Id.**).

In its appellate brief, the Commonwealth renews its request for this Court to remand Green's case to the PCRA court for additional fact-finding as to whether Willis had a cooperation agreement with the Commonwealth in place at the time he testified at Green's trial; whether this information was disclosed to trial counsel; and whether the information was material and any failure to disclose it prejudicial.  (**See** Commonwealth's Brief, at 7, 9).[7]

## II.

Before addressing whether we should grant the Commonwealth's request, we will consider whether the PCRA court erred in holding that Green's petition did not fall within any of the exceptions.  Green contends that the PCRA court erred in finding that he did not establish that he fell within any of the timeliness exceptions and by not holding an evidentiary hearing because there is a material issue of fact as to whether Willis was given favorable treatment in exchange for his testimony at his criminal trial.

Green notes that on November 15, 1999 – less than one month after he testified against Appellant – Willis entered a negotiated plea with the

---

[7] The standard of review of an order dismissing a PCRA petition is whether the court's determination is supported by the evidence of record and is free of legal error.  **See Commonwealth v. Williams**, 2021 WL 235988, at \*4 (Pa. Super. filed Jan. 25, 2021).

- 11 -

Commonwealth on his open murder case in which he pled guilty to third-degree murder and the Commonwealth agreed to recommend an eight-year probationary sentence on that charge. (**See** R415a–R416a.). Green contends that there was no dispute that the Commonwealth's recommendation hinged, at least in part, on Willis's cooperation against Bryant, whom the Commonwealth was planning to recharge in connection with Spearman's shooting death. The dispute is over whether his testimony against Green was part of that deal.

We begin by observing that a PCRA petitioner is not automatically entitled to an evidentiary hearing and we review a PCRA court's decision dismissing a petition without a hearing for an abuse of discretion. **See Williams**, **supra** at *4. A PCRA court may decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. **See id.** A reviewing court must examine the issues raised in the PCRA petition in light of the record to determine whether the PCRA court erred in concluding there were no genuine issues of material fact in controversy and in denying relief without holding an evidentiary hearing. **See id.**

Green contends that he fell within the governmental interference and newly-discovered fact exceptions to timeliness. "[A] properly plead[ed] **Brady** claim may fall within the governmental interference exception," **Commonwealth v. Breakiron**, 781 A.2d 94, 98 (Pa. 2001), so long as the

petitioner "plead[s] and prov[e]s the failure to previously raise the claim was the result of interference by government officials, and the information could not have been discovered earlier with the exercise of due diligence," ***Commonwealth v. Abu-Jamal***, 941 A.2d 1263, 1268 (Pa. 2008). A petitioner satisfies the newly-discovered fact exception through pleading and proving that there were facts that were unknown to him and that he exercised due diligence. ***See Commonwealth v. Bennett***, 930 A.2d 1264, 1274 (Pa. 2007).

In this case, the PCRA court relied on the public record presumption[8] in concluding Green failed to file his claim within sixty days of the date he could have first presented it. (***See*** PCRA Ct. Op., at 6). The court reasoned that Green had not shown due diligence because he had access to the substance of Willis' testimony at Bryant's trial, as it was immediately available to the general public and Green was represented by counsel at that time.[9] (***See id.***).

However, on October 1, 2020, five months after the PCRA court filed its Rule 1925(a) opinion, our Supreme Court decided ***Commonwealth v. Small***, 238 A.3d 1267 (Pa. 2020). In ***Small***, the Court disavowed the public record

---

[8] This presumption provides that information available to the public is not "unknown" to a PCRA petitioner who is represented by counsel. ***See e.g.***, ***Commonwealth v. Burton***, 158 A.3d 618, 624-25, 719 (Pa. 2017).

[9] Green points out, unlike the newly-discovered fact exception, the governmental interference exception does not refer to diligence. ***Compare*** 42 Pa.C.S. § 9545(b)(1)(i) with 42 Pa.C.S. § 9545(b)(1)(ii).

presumption regardless of a petitioner's *pro se* status and overruled any earlier decisions that relied upon and applied that presumption to reject a petitioner's claim. **See id.** at 1286.

In this case, Willis' testimony was central to the Commonwealth's case against Green since Willis provided testimony in direct contradiction to Green's claim that he acted in self-defense in shooting Spearman. The PCRA court dismissed Green's petition without a hearing based on the public record presumption that he should have known of Willis' testimony in 2001. Because **Small** did away with the public record presumption, not to mention the Commonwealth's belated discovery of information suggesting a plea deal, remand for an evidentiary hearing is necessary to examine the underlying material issues of fact as to the timing and extent of Willis' cooperation with the Commonwealth in exchange for which he received a probationary sentence for his 1983 third-degree murder conviction, and to determine whether the timeliness exceptions at §§ 9545(b)(1)(i) and/or (ii) apply in this case. **See** Pa.R.Crim.P. 908(A)(2) (PCRA court shall order hearing to resolve material issues of fact). The Commonwealth's motion to remand because of the after-discovered undisclosed document is denied as moot.

Order vacated. Case remanded for further proceedings consistent with this Memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/25/21